Good afternoon, your honors, and may it please the court. Jordan Bach from Goodwin-Proctor representing plaintiff's appellants, the Wilsons. I'd like to reserve three minutes for rebuttal. The record in this case and this court's prior decision show that this case should be set for trial. The Wilsons sued the City of Southlake under the Americans with Disabilities Act and the Rehabilitation Act after a January 23rd, 2014 incident when their son, SW, was handcuffed and verbally berated by Sgt. Baker, a school resource officer at his school. This incident occurred only two weeks after a prior similar incident, of which Sgt. Baker was indisputably aware, when a different school resource officer had managed highly similar behavior without resorting to handcuffing or verbal taunts. The Southlake Police Department fired Sgt. Baker soon after for what it deemed his unreasonable and unprofessional behavior, which, it said, reflected poorly on the entire law enforcement profession. Counsel, let me ask you some questions about discovery before we get too far into this. What discovery was done the last time the case was here, prior to the last time the case was here? There had been, there were discovered, regarding Sgt. Baker's view of events, along with Principal Wagnon and Officer Slusser, the involved parties. There had not been, my understanding is, any depositions taken, so all of the deposition testimony postdates this Court's prior appeal. And that was my next question, is what was done, obviously, since the case was here till the time that it was dismissed on this occasion? I think the key new evidence, at least based on my understanding in particular of what Southlake is identifying, are the depositions from Sgt. Baker and Principal Wagnon in particular, and then a new declaration from Sgt. Baker that was not in the record on the prior appeal. Is the transcript of Sgt. Baker in the deposition transcript in the record? It is. It's at 1343 to 1347, is his deposition. We would, so there, Southlake is identifying that as new evidence. I don't think it creates a dispute of material fact, or sorry, I don't think it undercuts this Court's prior determination that there was a dispute of material fact, either because I think the evidence duplicates what was previously in the record when the case was up on the appeal, or because it doesn't actually undercut this Court's decision that there was a dispute of material fact. So I think in particular, most of the new evidence goes to the question of notice and whether Sgt. Baker was aware. Well, on that point, and consistent with my inquiry about discovery, are there any written notes or any minutes of the October 2013 meeting? It seems like that's when the first raft of information is given to the school authorities about the condition of the child involved, SW. That's correct, Your Honor. There are not, that's correct that that is the first time. I think we have something in the record pointing to the discussion between the school and the parents. There are not minutes from those meetings. What we have is the email exchanges between Principal Wagnon in particular and then the parents discussing, referencing meetings that have occurred or information they would like passed along to people who participated in those meetings. We do have incident reports from the police department in October in particular that are sort of contemporaneous with those meetings. In particular, there's an incident report in the record from the October incident, early October incident when SW threatened to commit suicide and officers were sent to his school. We have the incident report from that, but we don't have minutes from the meetings in particular. Okay. And also with regard to the medical information, do we have written authorizations that have been properly signed by the parents of SW in the record? That's question number one. Or in the alternative, releases that the school authorities could have used to We do not have in the record the specific signed releases or in either form either the specific signed forms. There is a discussion in the record going back and forth about whether the parents had properly authorized the school to begin the special education evaluation and whether they needed a written signature. We have that. We don't actually have the specific signed forms in the record. The Wilsons did directly inform Principal Wagnon, though, and this is on 2022 to 2023 in the record, that SW had been diagnosed with autism and ADHD and anxiety. He was seeing a psychiatrist and a psychologist and that the parents anticipated that they would authorize the school to conduct a fuller evaluation once his medicine had time to take effect. And is there a specific outline that the parents gave as to what the accommodation should be? Or is there just a demand for an accommodation that needed to then be worked out involving the health care professionals? There was a discussion that I believe the way the parents phrased it was SW was not functioning properly in school, was not able to participate in the school environment and that the parents requested that the school put in place a behavioral intervention plan that would allow him to access his education. What the school put together is on 1804 in the record and outlines a series of steps that the school was going to take to make sure that he was able to access his education and be in the classroom and not in the principal's office in particular. Walk me through, if you could, how the police department or the city knows what we're talking about now in terms of the back and forth with the school and the parents. Where is this imputed to the city for purposes of your claims? There are three pieces of evidence I'd point the court to. I think the first is just direct evidence of Sergeant Baker's knowledge of SW's limitations in the school setting and that comes in particular from the January 7th incident report. Limitations or the disability of his diagnoses? I believe the January 7th report shows his limitations. Specifically, limitations as this court explained in Taylor is how are you able or unable to function in the environment at issue. So here in the school, the January 7th incident report I think details SW's difficulty functioning in a school environment and his inability to cope with being given directions from the principal and from Officer Slusser in that incident. And I think anyone reading that incident report, which Sergeant Baker did, he signed off on it, would be able to recognize that this was a student who was having severe limitations on his ability to learn away from just having difficulty in a classroom or talking off to a teacher or anything like that. I think there is sufficient evidence to create that a reasonable jury could decide from that January 7th report that Sergeant Baker was unnoticed, that SW needed accommodations in the school environment because of his inability to function. The second piece of evidence I'd point to backing that up is the October incident report from the SROs that SW had engaged in or had stated that he was considering committing suicide and the school resource officers were sent to his home to investigate. So I think in addition to his difficulty functioning in school, the SROs were aware that he had on multiple occasions expressed suicidal thoughts in school. And then the final piece of evidence I'd point to is the email chain between the Wilsons and the school, which is on 2022-2023, when the Wilsons told the school, SW has been diagnosed with anxiety and ADHD, he is seeing a psychiatrist, he's seeing a psychologist, he needs support in the school environment, we plan to move forward with a more formal evaluation once his medications have had time to work. And I think on summary judgment, that is sufficient drawing inferences in favor of the non-moving party to suggest that Principal Wagnon, who was highly involved with SW, was clearly trying to do her utmost to make sure that he was getting all of the support he needed, would have passed that along to the school resource officers. Do you have any evidence that Baker or the city knew of that third point, for example? We do not have any direct evidence that Principal Wagnon passed that along. She wasn't asked that directly in her deposition and there's nothing in the record to show that it was passed along. I do think on a motion for summary judgment that the inference should run in our favor that she did pass that along, particularly given the... That's not an inference so much as it is just speculation at this point, correct? Without evidence? I don't think so, Your Honor, because I think the evidence on one side is SW's parents asking Principal Wagnon to tell the school resource officers that SW had been diagnosed with these conditions and that he needed assistance in school. The evidence on the other side is a general statement from Principal Wagnon that the school didn't generally share information with the school resource officers. I think that is, in this case in particular, undercut by the level of discussion between the school and the school resource officers about SW, starting with his suicidal statements. And then second, a statement from Sergeant Baker that he wasn't aware of the disability. But of course, a very similar statement was up before this Court on the prior appeal and the Court said there was a dispute of fact on his awareness. So I don't think his bare statement in a declaration should be sufficient to show a dispute of fact on this question. I want to ask you again about the accommodation. As I understand it, and educate me here, but we've had a lot of these cases involving schools and accommodations and ADA claims. The accommodation is the result of a conversation and interface between the parents and the school officer, not a law enforcement officer, that's well versed in what can be done to create a reasonable accommodation. And then that's committed to some type of document or plan that's shared and deemed agreeable to everyone. So in order to, first of all, I'm not sure that we have that in this case. Tell me, first of all, am I correct in that it describes what the accommodation is? And third of all, doesn't the school system need to access the medical records in order for it to evaluate what the needs of the child are in the school setting? I don't mean to barrage you with, I see you jotting them down. I apologize for the compound nature of the question. No, no, that's helpful. Thank you. I think in a traditional ADA case where a student is arguing that they're not able to access school environment or remain in the classroom, I would agree with everything you said, that there would need to be a back and forth discussion about what accommodation should be put in place and we would look for some sort of documentary chain showing what that discussion had been. I think in this context, this scenario is more similar to the arrest cases that this Court has handled in Wyndham and others when there is no documentary chain leading up to it because it's a one-off incident and the question is how do the officers react to it in that moment. This Court has recognized that you can bring an ADA claim stemming from an arrest absent any sort of evidence of a prior back and forth that would, there would be no opportunity to have the prior back and forth to put in place the reasonable accommodation. I think this case is more akin to that context, at least in this particular dimension, in that the question when Sergeant Baker encountered SW in terms of the reasonable accommodation is, you know, based on the training he had received, based on his awareness of SW, what would have been a reasonable reaction in the same context or in the same way that we would think through what would be a reasonable reaction for a police officer who hadn't previously interacted with the person he was encountering. So I think here, you know, to move on to your second and third questions, there isn't, there isn't a particular document discussing how school resource officers should handle this particular conduct. There is the behavioral plan in 1804 which recognized that the school, you know, had particular points including for SW to speak with a trusted adult, to de-escalate his behavior. I mean, conduct that I think would inform certainly what happened here but isn't directly on point. But I don't think given the sort of emergent nature of what was happening that this is a situation where we would show that there was prior documentary evidence. And I think, you know, moving to your third point about accessing the medical records, I don't think that is a requirement for showing a claim under the ADA in this context. Southlake is not disputing that SW was a qualified individual with a disability. They are not disputing that his conduct in this incident was caused by his disability. So I don't think we need to show that the school, you know, I don't think the school is disputing, excuse me, I don't think Southlake is disputing that he, that he had a disability nor do I think they're disputing that the school was on full knowledge of that disability. I think it's, the question is whether that would then transfer over to Southlake but I don't think we need to point to, you know, particular medical evidence showing that he had a disability in his hand. I think thinking through the reasonable accommodation point, I think there is extensive evidence here without any sort of prior, even without a prior plan in place of why the Wilson's requested accommodations here are reasonable. The best evidence of that is how the other adults handled both this scenario and the prior very similar incident on January 7th. On January 7th, SW engaged in a highly similar course of conduct, involved similar language, similar physical actions, and Officer Schlesser stood back, as this court noted in its prior opinion, did not handcuff him, attempted to deescalate the situation, and the situation ended without, without anyone being handcuffed or any sort of verbal antagonism, the behavior that is at issue here. The same thing was true- I thought all that attempts to placate didn't work, in fact. That even after they tried to deescalate, there were still some physical actions, as you call them. I think on January 23rd, when Sergeant Baker arrived at the scene, Officer Schlesser's first statement to Sergeant Baker was stand back and don't say anything. So I think that shows from the, from the adult who was on the scene on the very day in question and had been observing firsthand everything that was happening, that his view was that the So I think you have sort of rare evidence in this case of two police officers facing the same situation, and one says to the other, do not intervene, and Sergeant Baker chose a different path. So I think in thinking about- The standard's not relative between those two for this claim, is it? I mean, I understand your point, but that's not the legal standard that we have to apply, is whether one officer was going to do it the right way or the more successful way or the more gentle means than the other. That's not the standard that we apply here in order to find that Baker did something that creates liability. I disagree in the sense that Sergeant Baker's justification for his conduct was his concern over safety and the safety of the other students and FW safety. Officer Schlesser was looking at the same situation and decided that his evaluation of the safety concerns was that he did not need to intervene at that point. So I think if we're thinking about whether or what would have been a reasonable accommodation, which is highly fact-specific, is a totality of the circumstances analysis, and thinking about whether a reasonable jury could decide that his intervention was not reasonable, what Officer Schlesser decided to do in that same moment is relevant to evaluating whether it was reasonable for him to, very shortly after arriving, decide that he needed to put SW in handcuffs while he was in an empty hallway. There were not other students around. I think they were in the process of continuing to try and de-escalate the situation, but there was no immediate evidence that he was a threat to other students, and I think that is why Officer Schlesser had decided in the moment that the appropriate step was to stand back rather than to rush in and intervene and handcuff SW. If there are no further questions, I'll reserve the remaining time. We'll see you back on rebuttal in a few minutes. Mr. Krueger, step right up. May it please the Court, counsel. I represent the City of Southlake. Sergeant Baker has been dismissed from this lawsuit, and the Carroll ISD is not present in this litigation. Plaintiffs, they've dropped their Fourth Amendment excessive force case. They've dropped their 1983 case. They appear to have dropped their title, their Texas Tort Claims Act case as well, and they're here on the ADA and the RA claims. Their claims really complain of the abuse, the alleged abuse, that was suffered at the hands of Sergeant Baker, and Sergeant Baker's a peace officer. He is not an educator. Their disability claims all stem from the City of Southlake's alleged failure to train or supervise student resource officers, and Sergeant Baker in particular, in the interactions with disabled children, especially SW, as opposed to a failure by the Carroll Independent School District in the administration of an educational program. With regard to the elements, they have to show that there was a qualified individual with a disability, and we really haven't done the discovery on that, and we would have gone to trial, but the plaintiff's lawyer withdrew or asked to withdraw, but we're really here on did the City of Southlake exclude or deny SW and his family from participating in the benefits or services activities that were being provided, as well as the second and third element that this is solely by SW's disability. In our situation, nowhere in the plaintiff's live complaint, and only once in the response or the serve reply, and there's no evidence that the City of Southlake ever deprived or excluded SW of anything. When Southlake was called, and that's happened several times, the school district was moving, the school district was trying to find out what was going on. Back in October, due to many absences, and then the statement by SW at the school and outside of Baker's presence, the principal Wagnon learned about it, and the principal Wagnon called and contacted CPS. Principal Wagnon asked for an October 9 meeting, and in that October 9 meeting with school resource officers and officials of the school district, they said we need to look into this, we need to if there were problems at home, and there was no indication that there's a disability with the child. Council opposite, I'm going to stop you kind of, you're talking along these lines, but council opposite raised three different pieces of evidence that I guess would be the basis for imputing what the school knew, knowledge of a disability, et cetera, and the accommodation plan, if I can summarize it, to the city. So if you could comment specifically on the three pieces of evidence that council opposite cited. One was the incident report I guess in October. January 7. I've got it, Your Honor, because I made notes of that, and thank you for the from Sergeant Baker that he knew something. When we deposed the principal, when we deposed the school district, they said they did not transfer any of that information to the city and to Sergeant Baker. At best, Sergeant Baker, and he's not reading all these reports, but making statements and missing classes, and that's the January 7 incident. And that's Officer Slusser that's there present in that. There's a meeting in October where they say let's go and see. When Sergeant Baker goes there, he can't get the Wilsons. When the other group, and that's school district officials and a couple of these officers, when they go there, they don't get any information. And then after that, October 15 or something like that, you get an email from Mr. Wilson that says here's a list of the doctors that he's seeing, but no specifics about any disability or any diagnosis or what the limitations are. And the limitations are the most important thing. How do we deal with this person? What are the limitations that we have to accommodate? Never addressed. With regard to that first piece of evidence, he knows of the child. He doesn't know anything about a disability or about the limitations, and there's no evidence, none, after many years and a lot of money spent on this case, no evidence that he knows anything about the disabilities. Is there enough there, though, as counsel Opposite said, to create an inference for the purpose of summary judgment that the principal had conveyed the information to the SROs, including Baker? Not any. Not any information. And it's almost like in the beginning you've got HIPAA, you've got all kinds of situations, you're dealing with a young child, until you know from the school district's perspective, until they have a sound, reasonable understanding, they're not going to blow rumors to the wind to see that, you know, we've got a child with trouble, let's treat him in some kind of way, because we think he might have some kind of disability that we don't know of, don't understand, and definitely don't know the limitations to. So that's a real problem. The email chain is just between the school district and the parents. And when they ask for a consent form, it's not properly provided. There was no evaluation of this child done by Carroll Independent School District, and nothing was conveyed to the officers, and there's no dispute in that, no evidence of that. And then they had no way to react because they don't know. The safety was the biggest point in all the real reference that they have to work from. But Slessor says to Baker when he gets there, don't say anything, don't do anything, just stand back, or whatever he said. It was basically modeling after what, I think I've got the name right, Slessor had done. Is that enough to give an inference that there was some sort of accommodation that was merited? I don't think it is at all. Even when you combine that with the fact that Sergeant Baker was reprimanded and actually terminated because of the unprofessional behavior? The way I look at it is, if you're looking at all the evidence, you'll see that this with murder. He says, I'm going to have to kill you. He identifies a weapon, he brings a weapon, and he escapes from these people. When Baker finds this child, he is loose and running in a hallway. He has to grab him, handcuff him, bring him back in, and then Slessor is saying, stand by. Baker did not ever meet or personally deal with this child until this January 23rd event. And when he does see him, he's loose, escaped in the hallway. Counsel, did you depose the parents in this case? Yes, I did. And is there anything in the course of that questioning that the parents were aware that SW was bringing what turned out to be, as I understand it, a jump rope, but that SW considered it to be a weapon and referred to it as nunchucks or something like that? That the parents were aware that day that he was going to school with that mindset? They never acknowledged that to me. And this child says, I've killed animals with this, which is different from the January 7th incident as well. This is a very volatile and questionable situation. So the officer reacting to it, his first duty is safety. Just like you have all kinds of safety in this courtroom, you have to ensure the integrity of the environment to get the jobs done that you need to have. And it's the same in education. And frankly, it's the same in law enforcement. It has to be a safe environment that we start from. That's the fundamental. And then I can't discriminate. Sergeant Baker can't discriminate. City of Southlake can't discriminate. Carroll Independent School District cannot discriminate against something that it doesn't know. You cannot attribute malice. To something that can be explained away truthfully in ignorance. Why are we ignorant of these things? Well, someone doesn't want to tell us. Why do we ask for these things? Because we don't want to be ignorant. Why aren't they provided? They have not been provided. And Carroll Independent School District cannot do its job. Carroll Independent School District did not tell the officers. But when it's out of Carroll Independent School District's control, the officers are summoned. Their first job is the safety of everyone involved. And they don't need to be injured to do that. They didn't know. Sergeant Baker did not know what limitations this young man has. We still don't know them to this day. And young SW is no longer a student at Carroll Independent School District. They settled with them just like they did their other son. And they don't go to school there anymore. They're provided an alternative way to educate them. So in looking at this, there is no evidence that Carroll, that the City of Southlake, excluded or denied SW of any benefit or service or activity. That was already done before we got there. And there's no evidence that it was done solely because of a disability. Because Southlake, Carroll didn't know what the disability was or the limitations. Southlake didn't know what the disability was or the limitations. Baker did not know what the disability was or the limitations. So with regard to the summary judgment, as Judge Reed O'Connor has done now twice, we respectfully ask that that summary judgment be reinstated or affirmed. And... To support that, there is no evidence, again, that Sergeant Baker had some pre-existing prejudice or ill will or spite or deliberate indifference. Of this child's disability before he met the child loose in the hallway. There is no evidence... We've covered a lot of this, and I apologize for jumping around, Your Honor. There is no evidence of the retaliation. The evidence that is there, the plaintiffs, Wilson, the appellants in this situation, would have to show that they engaged in a protected activity, that they suffered an adverse action, and that there was a causal connection between the two. Normally, that has to happen separate in time, so that you would have had these events and then a subsequent act of retaliation, and that hasn't happened. We have not touched on damages at all, but the damages do come up in that the Cummings case has come down, talking about the Rehabilitation Act being part of the spending clause legislation. There's no mental anguish. We do look to preserve the Haines exception. We think that it's applicable in this case. We would argue the undue hardship. We don't have to do that again here. And the plaintiffs, you don't get it both ways. If it is an IDEA situation for educational purposes, they would have had to exhaust their remedies. If it's about the abuse, they don't have to exercise those. I appreciate your time and your patience. If you don't have any questions, I'll give you back the time. All right. Mr. Kruger, thanks so much. We appreciate it. Thank you. Ms. Bach, you have reserved three minutes for rebuttal. Take it away. Thank you. I'd like to make three points. First, Southlake's description of the reasonableness and the harm in this case is directly contrary to this court's prior decision. This was an 8-year-old with a jump rope in an empty hallway, which is what this court recognized in its prior opinion. A reasonable jury could decide, given that scenario, that the way Sergeant Baker reacted when he encountered SW was not reasonable and that the reasonable step would have been to delay before handcuffing him. I don't think Southlake's description can be squared either with the record or with what this court said previously. Second, on the notice point, the email chain from the Wilsons to Principal Wagner specifically identified the diagnosis that SW had of anxiety and depression and autism, asked Principal Wagner to pass that along to the SRO specifically. So we have evidence that the parents are asking the principal to tell the school resource officers, our son has been diagnosed with these conditions, he's being treated by a psychiatrist and a psychologist, we need the school to work with us to put in place accommodations to make sure that he is able to function in a school environment. I don't think it is speculative that that information, particularly on summary judgment, would be passed along, particularly because there was an extensive history of Principal Wagner working with the SROs. Principal Wagner, and this is on 1705-1707, had specifically involved the SROs when SW had previously made suicidal statements. She informed them of what was happening. She said his statements were getting more concerning and asked them to do a home visit. So this was not a scenario where there was a wall between the school and the SROs. To the contrary, Principal Wagner was doing everything possible to figure out how to manage SW's behavior, including working with the SROs, and I think certainly on summary judgment, you could draw an inference in our favor that that information was passed along, particularly in addition to all of the direct evidence we have of Sergeant Baker's knowledge. Third, I just point out, I think this is an egregious situation, and I do think it is distinct from many of the other ADA cases this Court has dealt with. You have a student, as this Court recognized, who is 8 years old. The other adults involved in this scenario who are dealing with precisely the same conduct had decided it was not necessary to handcuff him. So you have a unique situation where you have essentially a test case set up of how else this scenario could have been dealt with. There is extensive evidence of the school's back and forth with the parents. There is extensive evidence... Counsel, not to interrupt, but your time is running out, and I'd ask if you had anything to say in response to the Cummings no damages argument. I do think Cummings forecloses the possibility, likely forecloses the possibility of mental anguish damages under the ADA, and it does foreclose it under the Rehabilitation Act, but the Wilsons in their complaint requested damages for mental anguish, for physical damages. They also have out-of-pocket compensatory damages from doctor's visits. The district court declined to reach that. I think it is an issue that would need to be addressed on remand. The complaint was not limited to mental anguish damages, so even assuming those are out of the case, we certainly have other damages claims. Thank you, Your Honors. Thank you very much. We appreciate arguments today from both sides.